## Case No. 545.

### ARMSTRONG v. MECHANICS' NAT. BANK.

[6 Biss. 520.][1]

Circuit Court, N. D. Illinois. March, 1876.

SETTLEMENT WITH CREDITORS—PREFERENCE—MISREPRESENTATIONS.

Where a debtor who has made a settlement with his creditors, seeks to recover a certain

---

[1][Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

sum paid by him to one creditor, above the percentage paid to others, it is a good answer that the settlement was obtained by misrepresentation, and that the debtor concealed a valuable portion of his assets.

[Cited in Owens v. Ohio Cent. R. Co., 20 Fed. 15.]

[In equity. Bill by Edwin R. T. Armstrong against the Mechanics' National Bank of Chicago] to recover the sum of thirteen hundred dollars paid by the complainant under the following circumstances: Early in 1873, complainant became embarrassed, and being unable, as he claimed, to pay his debts in full, he entered into a composition arrangement with all his creditors, among whom was the defendant, by which he agreed to pay and they agreed to accept fifty cents on the dollar of their claims, such payment to be secured by notes indorsed or guaranteed by a third party. The complainant alleged, however, that the defendant refused to sign the composition unless it should receive notes for ten per cent. in addition to the fifty per cent. agreed to be paid to the other creditors. This was denied by the defendant, which insisted that Armstrong regarded its claim as of a higher character than those arising from commercial transactions, it being for borrowed money, and that, after the composition was signed, he volunteered to give the defendant his notes for the extra ten per cent. It was admitted that the defendant did receive the complainant's notes for ten per cent. of its claim, in excess of what was received by the other creditors. These notes were assigned by the defendant to another bank, before maturity, and paid by the complainant. He thereupon filed this bill to recover the amount of the ten per cent. thus agreed to be paid to the defendant, alleging that the notes for the same were obtained from him in fraud of the rights of his other creditors, and without their knowledge. The defendant insisted that the complainant had himself been guilty of fraud in not making a full disclosure of his assets to his creditors at the time the composition was obtained.

E. A. Otis, for complainant, cited:

Wood v. Barker, L. R. 1 Eq. 139; Breck v. Cole, 4 Sandf. 79; Lawrence v. Clark, 36 N. Y. 128; Way v. Langley, 15 Ohio St. 392; Russell v. Rogers, 10 Wend. 473; Cockshott v. Bennett, 2 Term R. 763; Jackson v. Lomas, 4 Term R. 166; Horton v. Riley, 11 Mees. & W. 492; Bean v. Brookmire, [Case No. 1,170;] Hatch v. Hatch, 9 Ves. 292; Jackman v. Mitchell, 13 Ves. 581; Story, Eq. Jur. 378; Saddler v. Jackson, [Ex parte Sadler,] 15 Ves. 52; Howden v. Haigh, 11 Adol. & El. 1033.

McCagg, Culver & Butler, for defendant, cited:

Seving v. Gale, 28 Ind. 486; Huntington v. Clark, 39 Conn. 540; Richards v. Hunt, 6 Vt. 251; Clarke v. Tipping, 4 Beav. 588; Phetti-

place v. Sayles, [Case No. 11,083;] Mallalieu v. Hodgson, 16 Q. B. 689.

BLODGETT, District Judge. This bill is filed to recover from the Mechanics' National Bank thirteen hundred dollars, which, it is alleged, was extorted by the bank from the complainant, by moral duress, or, by taking an unfair advantage of the circumstances in which the complainant was placed at the time of the alleged transaction. In 1873, Armstrong, then a merchant in this city, finding himself embarrassed in his pecuniary affairs, sought a composition with his creditors, and for that purpose made out a statement of his financial matters, assets, and liabilities, and presented it to his creditors, representing that from that showing he would be able to pay them fifty cents on the dollar. The Mechanics' National Bank was a creditor for money loaned, and interest accrued thereon to the amount of thirteen thousand dollars.

The allegation of the bill is, that Armstrong applied to the Mechanics' National Bank to have them sign the composition; that they refused to do so unless he would also, in addition to paying them fifty cents on the dollar, give them his notes for ten per cent. more, making sixty cents on the dollar, and that in order to secure the assent of the bank to his composition, he did give them his notes according to the terms of the composition for the fifty cents, and then his further notes for the sum of thirteen hundred dollars, to make up the additional ten per cent. which was exacted from him. This bill is now brought to recover back the excess over the fifty cents on the dollar, on the ground that it was extorted from him because of the peculiar circumstances under which he was placed.

The defense set up, is that the composition itself, offered and obtained by Armstrong, was fraudulent.

The evidence shows that Mr. Armstrong made out what purported to be an abstract, from his books, showing his liabilities and assets, which he presented to his creditors, claiming it to be a true one, and offering to allow his creditors to examine his books; that Mr. Page was the vice-president of the bank, and that his firm were also creditors of Armstrong to the amount of several hundreds of dollars, and that in his own behalf, as a member of the firm, and also as an officer of the bank, he examined Armstrong's books, was satisfied that fifty cents on the dollar was all that he could pay, and recommended the officers of the bank to accept the proposed compromise. Mr. Scammon, the president, claimed that an indebtedness to a bank for borrowed money stood upon a different footing from a commercial indebtedness for goods sold, and that the bank ought not to compromise for the same amount. It is claimed that on making out this statement, upon which the compromise

was finally effected, Mr. Armstrong omitted from his statement of assets, a valuable farm in the central part of Illinois, which cost him over three thousand dollars, and a thousand dollars full paid stock in the Republic Life Insurance Company, and the evidence shows very satisfactorily and completely, that he did keep back from some of the creditors the knowledge of his interest in this farm.

The law undoubtedly requires that parties seeking or making a composition with their creditors should make a full and honest disclosure of their affairs. Any withholding information valuable to creditors vitiates the entire transaction. It also, undoubtedly, authorizes a party who, for the purpose of getting a given creditor to sign, is compelled to pay more than he pays other creditors to recover back from the extorting creditor the amount which he is paid in excess of the others. But it strikes me very forcibly, and I can see no escape from the position, that a creditor, coming as Mr. Armstrong now does into this court, to recover money which he claims has been extorted from him, must come with clean hands and be able to show that the composition which he sought to, and did, obtain from his creditors, was such an one as they would have indorsed if they had known all the facts. Now, here are four thousand dollars of this debtor's assets concealed from the creditor whom he now calls into court to answer for unfair practice, and I have no doubt that this creditor may reply to such demand by saying that the composition obtained was a dishonest one; nor have I any doubt that if Armstrong were now solvent, a cross bill might be filed to recover the full amount of the debt.

The evidence regarding this farm has been extorted from Armstrong in such a manner as to make it at least a very strong circumstance against his good faith. Of course, there may be such a thing as a man with fifty or sixty thousand dollars assets, overlooking an item of this kind; but in the first place, Armstrong's commercial books, to which he invited his creditors' scrutiny, contained no reference whatever to this farm, and it does not appear that Mr. Page's attention or notice was called to it. Nor does it appear in his exhibit of assets and liabilities. When the defendant first began to ascertain that there was any withholding of information regarding assets, Armstrong was asked if the exhibit which he presented to Mr. Page, and upon which this composition was negotiated, contained a true statement of his liabilities and assets. He said, finally, after some hesitation—"Certainly it is true, as far as the liabilities are concerned." Subsequently, he was asked if he had any interest in this farm: he stated that the title was in his wife. It was subsequently developed —extorted item by item—that the facts regarding the farm were these:

Sometime in 1868, he bought this farm at

a cost, including improvements, of over three thousand dollars, placed the title in the name of his wife, and his father in possession. In 1871, Mrs. Armstrong died, leaving a will in which she devised this property to her husband, which will was never probated, but was retained by Armstrong in his own possession. During the time this settlement was being negotiated with his creditors the facts regarding this farm were certainly withheld from Mr. Page, and the officers of the Marine Bank. It seems to me that there was clearly such concealment of some part of this party's assets, as to at least constitute a sufficient answer to his present claim of having been unfairly dealt with; that the complainant is not in such a position that he can complain of unfair dealing on the part of the defendant. The bill is dismissed.

NOTE. [from original report.] To pay one creditor or his agent a larger sum than was to be paid to others, as a condition of accepting a compromise is void, and if the creditor's agent was specially retained by the debtor to urge the compromise, any promise to pay the agent for such service is void. Bullene v. Blain, [Case No. 2,124.]